## MARIE LARZELERE v. FRANK KIRCHGESSNER.

*Liquor traffic—Civil damage act—Suit by wife—Evidence— Exemplary damages.*

1. In a suit by a wife to recover damages for the sale of intoxicating liquor to her husband, resulting in his death, testimony of the number of his children is irrelevant.[1]

2. A request by a wife not to sell her husband intoxicating liquor, made before the dealer is licensed to engage in the business, must be respected the same as if made afterwards; and proof

---

[1] See *Rosecrants v. Shoemaker*, 60 Mich. 4 (head-note 2).

of such request is competent as bearing upon the question of his willful disregard of the rights of the wife in subsequently selling liquor to the husband.

3. Willful disregard of the rights of a wife by the sale of liquor to her husband cannot be presumed, nor can the dealer be charged with notice that the husband is accustomed to become intoxicated without evidence of either actual *notice* of the fact or knowledge of its existence.

4. Exemplary damages, allowed to a wife by the (liquor) civil damage act, are punitory in their character, and designed to punish the defendant for some positive wrong done the wife, or for some gross neglect of her rights in furnishing liquor to her husband at the time alleged in the declaration, and the jury must exercise a sound discretion in determining the amount they will impose.

Error to Lenawee. (Peck, J., presiding.) Argued October 10, 1888. Decided January 18, 1889.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Charles R. Whitman,* for appellant, contended:

1. The jury had no right to consider the fact that the plaintiff had children, for the purpose of increasing her damages; citing *Rosecrants v. Shoemaker*, 60 Mich. 4.

2. The court erred in allowing a recovery of exemplary damages, there being no such willful, wanton, or reckless conduct on the part of defendant as to justify their imposition; citing *Kreiter v. Nichols*, 28 Mich. 496; *Ganssly v. Perkins*, 30 Id. 492.

3. Under a proper declaration, exemplary damages should be allowed if there is evidence tending to show that sales have been made against the wife's remonstrances; citing *Steele v. Thompson*, 42 Mich. 594; *Ganssly v. Perkins*, 30 Id. 492, and cases cited.

*H. C. Smith,* for plaintiff, contended:

1. The statute does not restrict recovery to the wife whose husband is in the habit of getting intoxicated, or who is intoxicated when the sale is made, and who has forbidden the sale; and if it did, this case is clearly within it; the fact of such prohibition was clearly established, and the sale was therefore unlawful; citing *Loranger v. Jardine*, 56 Mich. 518.

2. The declaration alleges that the defendant did "unlawfully sell," which is sufficient; and the objection should have been taken before trial; citing *Pattibone v. Meclem*, 45 Mich. 381; *Barton v. Gray*, 48 Id. 164; *Aldrich v. Chubb*, 35 Id. 359; and was waived by pleading to the merits; citing *Whelpley v. Nash*, 46 Mich. 25; and the declaration is sufficient; citing *Bodge v. Hughes*, 53 N. H. 615; *Barnaby v. Wood*, 50 Ind. 405.

CHAMPLIN, J. The plaintiff is the wife of George Larzelere, who came to his death on October 26, 1885, by falling from a wagon loaded with lumber upon which he was riding. He was a farmer, and had been married to the plaintiff about 12 years, and was 44 years of age at the time of his death, at which time the plaintiff's age was 33. His health was good, he was a strong man, and provided well for his family. He was in the habit. of drinking intoxicating liquors. He was not a bad drinking man at the time of his marriage, but gradually grew worse until the time of his death. Plaintiff testified that he came home two or three times when he had been drinking liquor; that during the last year of his life he came home twice when he was drunk; and that he would get drunk once in a while when they were first married. The defendant, Kirchgessner, was the keeper of a saloon in the village of Clinton, and plaintiff gave testimony tending to prove that he sold beer or intoxicating liquor to Mr. Larzelere on the day and a short time previous to his death, and that Larzelere was intoxicated when he started from Clinton to go home with his lumber. His load consisted of lumber piled a little more than even full with the wagon box, across which was a seat supported by springs at either end. He was seen at about 1 o'clock in the afternoon between Clinton and his home, by some persons in a house near the highway, sitting upon the wagon seat with his limbs extended upon the lumber, and his singular actions attracted their attention. They were well acquainted

with him, and as he was passing the house he appeared to lean forward for the apparent purpose of pulling the blanket over his limbs, but failed to, regain an upright position, and finally fell over the left side of the wagon to the ground. They hastened to his relief, and found him on his hands and knees trying to arise, with his head hanging down. They conveyed him to a barn near by, and laid him upon blankets, and one of them went for a doctor, who soon came, and found him dead. He died in a few minutes after the accident, and remained from the time of the fall to the time of his death in a comatose state. The wagon did not run over him, but the doctor, from an examination which he made at the time, satisfied himself that he died from a broken or dislocated neck.

The plaintiff brings this action under Act No. 191, Laws of 1883, which reads as follows:

"Every wife, child, parent, guardian, husband, or other person who shall be injured in person or property or means of support by any intoxicated person, or by reason of the intoxication of any person, or by reason of the selling, giving, or furnishing any spirituous, intoxicating, fermented, or malt liquors to any person, shall have a right of action in his or her own name against any person or persons who shall by selling or giving any intoxicating or malt liquor have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury;  *  *  * and in any action provided for in this section the plaintiff shall have a right to recover actual and exemplary damages."

There are only two questions raised by this record which we shall consider. The first relates to the admission of testimony, and in this connection the statement of counsel in his opening to the jury, that Mr. Larzelere at the time of his death was the father of several children. Mrs. Larzelere, when testifying in her own behalf, was asked:

"What family did he have?"

To which question the counsel for defendant objected as incompetent and irrelevant. The court ruled as follows:

"I will admit that for a qualified purpose, so that it shall not be considered, under the present ruling, as affecting the question of damages, but for the purpose of showing the situation of this woman with reference to her own right."

The witness then answered:

"Four children; the oldest is thirteen, the next is eleven, the next is seven, and the youngest is four."

Counsel for defendant then moved to strike out the answer, which was overruled by the court, and exceptions were duly taken.

The civil damage act of 1848, as amended in 1873, enacts that—

"Every such action shall be brought by, and in the names of, the several representatives of such deceased person, and the amount recovered in every such action shall be distributed to the persons and in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate." Act No. 94, Laws of 1873.

In such actions it is both necessary and proper to show who were the family of deceased, as these representatives have no separate right of action. But in a statutory right of action by the wife, where her recovery is confined to the injury to her alone, and where the children are given separate rights of action, what relevancy can such testimony have, if not to enhance the damages?

The statute declares that the general reputation in such action of the relation of the wife shall be *prima facie* evidence of such relation. Such testimony does not tend to prove that the husband was in the habit of becoming intoxicated; it does not tend to prove that he was intoxi-

cated at the time of his death; it does not tend to prove that defendant caused or contributed to his intoxication; it does not tend to prove that the wife is injured in *her* means of support. These are the facts in issue which entitle plaintiff to recover, and the only other question is the amount of damages to which she is entitled. If it is not admissible as bearing upon the amount of damages, it is wholly irrelevant. If all the children were of full age, and capable of maintaining themselves, there would be no object in asking such question by counsel for plaintiff.

In cases like this the effect of such testimony upon a jury cannot be disguised. It is harmful and injurious to defendant, for human nature is such that it necessarily has an effect upon the feelings and bias of a jury.

Ordinarily the situation and surroundings of a party may be given in evidence for the purpose of enabling the jury to understand the nature of the issues involved, and the bearing of the testimony upon such issues, and to enable them to consider the just measure of compensation. But where exemplary damages are allowed, with no fixed standard save a sound discretion, and where the parties standing in the relation inquired after have themselves a separate right of action for the same injury, such evidence must have an influence upon the minds of the jury, and necessarily influences their discretion. The relation of the mother to her children, and her duty to support them, will be liable to have a bearing upon the damages which they award to the mother; and it is this liability to influence which cannot be wholly prevented that renders a strict adherence to the rules of evidence the only proper method to pursue in such cases. Place the evidence before a jury, of children of tender years, bereft by the act of the defendant of the care and nurture of a father, and they made dependent upon the guardianship of the mother for maintenance and support,

and it does not lie in the domain of ethics to separate these causes from the effects, and prevent such consideration from operating upon the mind of the triers. It is the merest sophistry to say that this testimony may be admitted, but must not be considered. Testimony relevant to the issue may always be considered by a jury, and in cases where sentiment, regulated by reason, determines the amount to be awarded, as in the case of exemplary damages in actions of this kind, no nice distinction as to purposes for which such testimony is admitted can prevent a jury from considering it in arriving at the punitive damages they may see fit to impose.

The court admitted the testimony "for the purpose of showing the situation of this woman with reference to her own right." But it is not seen how the fact that the deceased had children in any way affected her own right of action against the defendant, any more than the fact that defendant had children would affect his liability to the plaintiff. She could not recover for her children's care, education, or maintenance in this action. For loss or injury to their means of support the statute gives a right of action to each child. I think the testimony was irrelevant, and should have been excluded.

The other question relates to the question of exemplary damages. The statute expressly allows them, and the circumstances under which they may be recovered are well settled in this State. *Daily Post Co. v. McArthur,* 16 Mich. 447. There was testimony which, if believed, tended to show that the defendant had been requested not to sell liquor to her husband. It makes no difference that he was not at that time licensed to sell intoxicating liquors. If the request was made, he was bound to respect it at his peril, and it was competent testimony as bearing upon his willful disregard of the rights of

plaintiff in subsequently selling liquor to her husband.

The court instructed the jury that the plaintiff would be entitled to exemplary damages, among other things, as follows:

"Or if you should find that he was in the habit of becoming intoxicated, so that Mr. Kirchgessner would know that by selling him liquor he would be injuring his wife, that would furnish ground for giving exemplary damages."

There was no testimony to base this portion of the charge upon. There is no evidence that deceased was ever seen intoxicated in the village of Clinton but the one time, and that was on the day of his death; and there is no evidence that defendant had ever seen him intoxicated, or that he knew that he was in the habit of getting intoxicated. Willful disregard of plaintiff's rights by defendant cannot be presumed, nor can he be charged with notice that plaintiff's husband was accustomed to become intoxicated without evidence of either actual notice of the fact or knowledge of its existence.

We think the court should have defined what was meant by "exemplary damages," as distinguished from actual damages, mentioned in the statute. He should have instructed the jury that the exemplary damages referred to in this statute were punitory in their character, and designed to punish the defendant for some positive wrong he had willfully inflicted upon or caused the plaintiff, or for some very gross neglect of her rights in furnishing liquor to her husband at the time alleged in the declaration, and that the jury must exercise a sound discretion in determining the amount they would impose.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.