## BOYDAN *v.* HABERSTUMPF.

1. APPEAL—ASSIGNMENTS OF ERROR.
    The practice of needlessly multiplying assignments of error is condemned.

2. INTOXICATING LIQUORS — ILLEGAL SALES — ACTION BY WIFE — EVIDENCE.
    In an action to recover damages for the illegal sale of liquor to plaintiff's husband, it was error to permit plaintiff to testify that she had a three-year-old child.

3. SAME—ARGUMENT OF COUNSEL—INSTRUCTIONS—CURING ERROR.
    Where not only was such testimony admitted, but counsel dwelt upon the fact in his argument, the subject of his remarks being present in the court-room, the error was not cured by striking out the testimony, and instructing the jury to disregard it, as well as the argument based thereon.

4. SAME—SETTLEMENT—DURESS—EVIDENCE.
    Where, in an action for the illegal sale of liquor to plaintiff's husband, defendant proved a settlement of plaintiff's claim, evidence that third persons told plaintiff that defendant had threatened to have her arrested as a common prostitute unless she should make the settlement was inadmissible to prove duress, without proof that defendant authorized or ratified such statements.

5. SAME—EXEMPLARY DAMAGES—INSTRUCTIONS.
    Although the statute giving a civil remedy against saloon keepers for illegal sales of liquor authorizes a recovery of exemplary damages, such damages are given in any case

129   137
s88ɴᴡ 386
129   365

129   137
135   ⁵652

129   137
e139  ² 65

129   137
152   515

only on the theory that the injury to plaintiff's feelings has been aggravated because of the wanton or reckless character of defendant's act; and it is error to instruct the jury that they may be awarded as "smart money," or "in the way of punishment, to make an example for the public good."

Error to Ionia; Davis, J. Submitted November 14, 1901. Decided December 21, 1901.

Case by Minnie Boydan against John Haberstumpf, a saloon keeper, and Frank E. Schmoltz and Stephen M. Bayard, his bondsmen, for the illegal sale of liquor to plaintiff's husband. From a judgment for plaintiff, defendants bring error. Reversed.

*V. H. & H. H. Smith*, for appellants.

*John Nichol* ( *George E. Nichols*, of counsel), for appellee.

MONTGOMERY, C. J. This is an action against a saloon keeper and his bondsmen to recover damages for illegal sales to the plaintiff's husband. The record contains 109 assignments of error, which, it is safe to say, is at least 100 more than raise any doubtful questions. Undoubtedly, counsel have a legal right to indulge in as many assignments of error as they choose; but, when error is assigned upon every ruling of the court in the progress of a trial, it imposes upon the appellate court the burden of practically retrying the entire case, reviewing every ruling upon the admission of testimony, and every argument of counsel or statement of the court during the trial. Such practice is not to be commended. A careful examination of the case before assigning error, we think, would have satisfied the counsel for the defendants that the circuit judge was not always wrong. We conceive it to be the duty of counsel to sift out the chaff from the grain to some extent, and not to impose that duty upon this court.

There is error in the case, and it must be reversed. The plaintiff, while a witness on the stand, was permitted

to testify that she had a young child, some three years old, which child was in the court-room at the time, and remained during the trial; and counsel, in arguing to the jury, dwelt upon this fact. This was error, within the ruling of this court in *Larzelere* v. *Kirchgessner*, 73 Mich. 276 (41 N. W. 488). It is true, the court, later on, struck out this testimony, and attempted to cure the error in its admission by his charge. But we are not satisfied that the error was without prejudice.

The defense offered in evidence a receipt, and testimony showing that the plaintiff was paid $10 to compromise her claim against the defendant. This was a complete defense, unless the plaintiff was able to show some duress or fraud in effecting the settlement. The circuit judge charged the jury, in substance, that this settlement was, binding unless the plaintiff had overcome the presumption of its validity by showing fraud or duress. Among the testimony offered to show duress was that of the plaintiff, to the effect that three different parties came to her and told her that defendant had threatened to have her arrested as a common prostitute unless she should discharge her claim against him. This testimony was clearly incompetent, unless some previous authority from defendant was shown, or unless there was a subsequent ratification of the acts of these parties, and a taking advantage of them, by the defendant. We are not able, upon this record, to see that there was such proof. The learned counsel for the plaintiff dismiss this important question without argument, simply saying it is unworthy of reply. We have not realized large advantage from this method of discussion, and, if there be anything in the record which justified the introduction of this testimony, and it has escaped our notice, counsel have themselves to blame.

But one other question requires notice. The circuit judge, after correctly stating that exemplary damages "are given where the act is of so wanton and willful a character, or where it brings such shame upon the party, as to have the effect of exciting his or her feelings more

than an act committed under less willful circumstances," added:

" 'Exemplary damages' mean damages given by way of punishment for the commission of a wrong willfully or wantonly done, and done with some element of aggravation. They are not the extent of the injury actually received, but are given as smart money, in the way of pecuniary punishment, to make an example for the public good, and to teach other persons not to offend in like manner."

The statute expressly authorizes exemplary damages in this class of cases. But "exemplary damages," as the term has been employed in this State, has generally been understood to mean an increased award of damages in view of the supposed aggravation of the injury to the feelings by the wanton or reckless act of the defendant. As was said in *Ford* v. *Cheever*, 105 Mich. 685 (63 N. W. 976):

"It has never been the policy of the court to permit juries to award captiously any sum which may appear just to them, by way of punishment to the offender, but, rather, to award a sum in addition to the actual proven damages, as what, in their judgment, constitutes a just measure of compensation for injury to feelings, in view of the circumstances of each particular case."

We think it should not be permitted that a jury be given leave to award damages as "smart money," or "in the way of punishment, to make an example for the public good."

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.